IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

ELVIS PEDRO                           :
                                      : CIVIL ACTION
    v.                                  :
                                      : NO. 22-0043
PARAGON SYSTEMS, INC.                 :

**MEMORANDUM**

**Juan R. Sánchez, J.**                                             **September 1 , 2022**

    Defendant Paragon Systems, Inc. moves to dismiss Plaintiff Elvis Pedro's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) on the ground that Pedro's failure to exhaust the remedies provided in the Collective Bargaining Agreement (CBA) between Paragon and the Security Officers Union of which Pedro was a member divests this Court of subject matter jurisdiction. Because the Court finds Pedro was not required to exhaust the grievance procedures under the Collective Bargaining Agreement at issue, the motion will be denied.

**FACTUAL BACKGROUND**

    Defendant Paragon is a company that provides security at the Federal District Courthouse on St. Croix. Compl. ¶¶ 3-4, ECF No. 1-3. In December 2017, Paragon hired Pedro, a resident of St. Croix, as a Court Security Officer (CSO) at the St. Croix Federal District Courthouse. *Id.* ¶¶ 2, 4-5. In 2019, despite receiving no verbal or written warnings, Pedro received two "improper suspensions:" a three-day suspension for complaining about his supervisor raising his voice to him, and a two-day suspension for "skylarking." *Id.* ¶¶7- 8. Pedro avers that on each occasion, Paragon did not interview him or conduct any investigation before suspending him. *Id.* ¶¶ 6-8. In March and May of 2021, however, Pedro "was the only CSO to receive certificates of commendation and

1

appreciation for the manner in which he handled his CSO duties," accompanied by payments of $25 on each occasion. *Id.* ¶ 9.

A few months later, on August 6, 2021, the Lead CSO told Pedro he was being suspended and directed him to turn in his equipment and stay home until further notice. *Id.* ¶ 10. Although Pedro called Paragon regularly to find out why he was suspended and when he could return to work, all he was told was "he would know when they knew." *Id.* ¶¶ 11-12. On August 20, 2021, after hiring counsel, Pedro finally had a meeting with Paragon representatives from which his counsel was excluded. During the meeting, Pedro was questioned about harassment allegations made against him by another employee, Agatha Edwards. *Id.* ¶¶ 13-15. Pedro explained he had been friendly to Ms. Edwards, "but she tried to take it to be something else, and he stayed away from her." *Id.* ¶16. However, after Pedro stayed away from her, Edwards purportedly "cursed him for a spill in a loud voice." *Id.,* ¶ 17. On another occasion, Pedro observed Edwards improperly talking to a juror, told her to cease and reported the event to her supervisor. *Id.* ¶¶ 16-17.

On August 26, 2021, Pedro was told he could return to work. *Id.* ¶ 18. The same day, Pedro wrote a letter to Paragon and filed a complaint against Edwards for her behavior, following which he was again told he could not return to work. *Id.* ¶¶ 19-20. Once again, Pedro began regularly calling to find out when he could return and was told "he would know when we know." *Id.* ¶ 21. Finally, in October 2021, Pedro was instructed to attend an interview with a George Kamage. Pedro did so but Kamage "from the start was clearly hostile" and "attempted to provoke Pedro with nasty comments and false allegations" such as telling Pedro his problem was "he liked to do things his way." *Id.* ¶¶ 22-24. Kamage told Pedro that reporting Edwards to her supervisor, instead of writing her up and making an official complaint was an error. *Id.* ¶ 25. On October 29,

2021, Pedro received a letter informing him he was terminated, effective immediately. Paragon claimed Pedro's termination was a result of the United States Marshals Service (USMS) directing his removal from the job. *Id.* ¶¶ 26-27.

On the basis of these alleged facts, Pedro brought suit in the Superior Court of the Virgin Islands, Division of St. Croix on April 21, 2022, for wrongful discharge and breach of the duty of good faith and fair dealing. Paragon was served with the Complaint on June 13, 2022, and removed the action to this Court on July 5, 2022, asserting it was preempted under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. After filing an Answer to the Complaint on July 12, 2022, Paragon also filed this motion seeking dismissal of the matter in its entirety for lack of subject matter jurisdiction.

**LEGAL STANDARDS**

A challenge to subject matter jurisdiction under Rule 12(b)(1) may be either a facial or a factual attack. *G.W. v. Ringwood Board of Educ.,* 24 F.4th 465, 468 (3d Cir. 2022). "The former challenges subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to 'consider the allegations in the complaint as true.'" *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (quoting *Petruska v. Gannon Univ.,* 462 F.3d 294, 302, n.3 (3d Cir. 2006)). "The latter, a factual challenge, attacks the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or 'otherwise presenting competing facts.'" *Id.* (quoting *Constitution Party of Pennsylvania v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)). "When considering a factual challenge, 'the plaintiff has the burden of proof that jurisdiction does in fact exist,' the court is 'free to weigh the evidence and satisfy itself as to the existence of its power to hear the case,' and 'no presumptive truthfulness attaches to the plaintiff's allegations.'" *Hartig Drug Co. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016) (quoting

*Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). "And, when reviewing a factual challenge, 'a court may weigh and consider evidence outside the pleadings.'" *Id.* (quoting *Aichele*, 757 F.3d at 358). "Therefore, a 12(b)(1) factual challenge strips the plaintiff of the protections and factual deference provided under 12(b)(6) review." *Id.*

**DISCUSSION**

Inasmuch as Paragon asserts that Pedro's failure to avail himself of the remedies provided under the CBA divests this Court of jurisdiction to hear this matter, it is raising a factual challenge to jurisdiction. This places the burden on Pedro to show this Court does in fact have jurisdiction over the subject matter at issue. To meet this burden, Pedro asserts he was not required to follow the CBA's prescribed grievance procedures, because the impetus for his termination was the directive from the U.S. Marshals Service.

Generally, to enforce a provision in a CBA, the agreement must be shown to: (1) apply to the plaintiff and his position, (2) apply to the plaintiff's claims against the defendant, and (3) cover the plaintiff's dispute as against the defendant. *Williams v. Galiber*, 70 V.I. 226, 230 (V.I. Super. Ct. 2019). In this case, the CBA at issue is between Paragon Systems, Inc. and the United Government Security Officers of America, International Union (UGSOA, IU) and UGSOA Local 060. It was originally effective from August 1, 2018 through August 31, 2021, but its effective date has been extended through September 30, 2022. Mem. in Supp. of Def's Mot. to Dismiss, Exh. 1, Art.1, § 1.1, ECF No. 6-1. The bargaining unit employees who are covered under the CBA are "all full-time and shared position Court Security Officers (CSOs) and Lead Court Security Officers (LCSOs) employed by the Company in the Third Circuit consisting of UGSOA Local 060 in the Virgin Islands (St. Thomas and St. Croix), excluding all other employees, including office clerical employees and professional employees…" *Id.* Art. 1, § 1.2. ECF No. 6-1. Because Pedro

held the position of Court Security Officer in the Federal District Courthouse on St. Croix from December 2017 until October 29, 2021, he was a bargaining unit employee covered by the CBA throughout most of the term of his employment and at the time his employment was terminated.

In Articles 6 and 7, the CBA provides for a grievance and binding arbitration procedure that applies to "a claimed violation, misinterpretation, or misapplication of a material provision of this Agreement, except as limited by Articles 3, 4, 5 or 6 of this Agreement, or the challenge of any disciplinary action taken against a Bargaining Unit Employee." *Id.* Art.6, § 6.1.  The grievance procedure proceeds in several steps; however, "any grievance involving discharge or suspensions should be commenced at the Corporate Step of this procedure." *Id* Art. 6, § 6.4.[1]  Thereafter, "[g]rievances processed in accordance with the requirements of Article 6 that remain unsettled may be processed to arbitration by the Union." *Id.* Art. 7, § 7.1.

With regard to employee discipline, the CBA stipulates "[t]he Employer recognizes the principals [sic] of progressive discipline," such that "the Employer will consider utilizing progressive steps (e.g., reprimands or warnings, followed by suspension, followed by termination, as it deems appropriate considering the circumstances." *Id*. Art. 8, § 8.2.  However, "nothing herein shall require the Employer to begin the disciplinary process at any particular level, [and] the Employer's right to determine that immediate termination is appropriate in certain situations is therefore not limited by this provision." *Id.*  The CBA further provides that "[a]fter the probationary period, no Employee shall be disciplined or terminated without just cause.  Just cause shall include but is not limited to any action or order of removal of an employee from working under the contract by the U.S. Government, or revocation of required CSO credentials by the

---

[1] The Corporate Step is the last step in the grievance procedure and consists of a written grievance. "If the Company denies the grievance or does not respond within fifteen (15) days, the Union may timely advance the grievance to the next step (arbitration)." *Id.* Art. 6, § 6.3.

USMS under the Removal of Contractor Employee provision in Section H-9 of the 3rd Circuit Contract between the USMS and the Company." *Id.* Art. 8, § 8.1.  Inasmuch as Pedro claims he was wrongfully discharged and Paragon breached its duty of good faith and fair dealing in doing so, the CBA applies to Pedro's claims against Paragon.

However, the CBA does not cover the dispute at issue here.  Both Article 4 and Article 8 of the CBA create a specific exception from the grievance and arbitration procedures "for those issues involving the USMS rights under the contract between the USMS and the Company." Article 4 reads in pertinent part as follows:

> The Company and its employees are providing a service to the United States Government, which bears responsibility and authority for providing security to federal judicial facilities.  Therefore, employees agree to comply with any verbal or written non-disciplinary directive issued by the government.  All discipline shall be subject to the grievance and arbitration procedures, except for those issues involving USMS rights under the contract between the USMS and the Company.  Government directives and any claimed violation of this Agreement which results from those directives are not subject to the grievance or arbitration procedure. …

The essence of this provision is reinforced in the final paragraph of Article 8, § 8.1:

> The Company may discipline Employees when necessary and discharge those who fail to uphold U.S. Government or Company standards as described above.  It is recognized by parties to this Agreement that progressive discipline generally shall be applied in dealing with Employees.  However, it is also recognized that offenses may occur for which progressive discipline is not applicable.  Disciplinary measures vary depending on the seriousness of the matter and the past record of the Employee.  All discipline shall be subject to the grievance and arbitration procedures, except for those issues involving the USMS rights under the Contract as referenced above.

Pedro alleges that when he endeavored to find out why he had been suspended and told to stay home until further notice, he was told each time that "he would know when [Paragon] knew." Compl. ¶¶ 11- 12, 20-21.  He further alleges that following his termination on October 29, 2021, Paragon "claimed the termination was caused by the US Marshals Service directing he be removed from his job." *Id.* ¶¶ 26-27.  Inasmuch as Pedro's termination ostensibly resulted from a decision

6

made not by Paragon but by the U.S. Marshals Service, it was not subject to the grievance and arbitration procedures provided in the CBA between Paragon and the Union.  Pedro therefore had no obligation or right to avail himself of those grievance procedures and/or arbitration.  Paragon's motion is thus without merit and shall be denied[2].

    An appropriate Order follows.

BY THE COURT:

**/s/** Juan R. Sánchez

_____

Juan R. Sánchez,    J.

---

[2]  If, in the course of discovery, the parties should learn that subject matter jurisdiction is indeed lacking for this or any other reason, a motion seeking dismissal can of course be entertained at that time. *See, e.g., Arbaugh v. Y & H Corp.,* 546 U.S. 500, 514 (2006).